First case on the call is 5-14-2344, Willis v. Captain D's, LLC Now we're recording, so speak up so it picks up your voice, okay? May it please the court, we're here today on a denial of a request for arbitration. The trial court denied our motion to compel arbitration. This case was filed in the Circuit Court of St. Clair County and plaintiff has alleged numerous tort and statutory actions against Captain D's and co-employees. It concerns incidents that occurred at the restaurant during working hours. By the allegations in the petition, there is no question because plaintiff alleges that at all times herein in the petition, in paragraph 12, of the complaint, that she alleges she was an employee of Captain D's working at the restaurant. All the incidents occurred at the restaurant as well. Plaintiff alleges that she was sexually harassed and sexually assaulted at the restaurant. The claim is brought in 12 counts. I represent the defendant, Captain D's, and defendant Santiago, who is the general manager, who has not alleged to have done any of the actions. Defendant Zborowski has not entered an appearance in the case. So we filed the motion to compel. There was extensive briefing. There was some discovery done in the case. And briefly, with respect to the facts of the case, plaintiff was an employee, became an employee of Captain D's on February 10, 2011. On that day, prior to starting employment, and she acknowledges in her own affidavit that as a condition of her employment, she was required to sign the arbitration agreement, which we have supplied the court with. In the employee dispute resolution agreement, she specifically indicates that in consideration and as a material condition of my initial and or continued employment with Captain D's, I agree as follows. There is no question by the plain reading of the agreement that she was going to be an employee of Captain D's. She specifically states in the agreement that she waives her right to a jury with respect to any legal claim I may have against the company, the company being specifically spelled out in the agreement as Captain D's. She also indicates that in this dispute resolution process that any claims, and she says, and the agreement specifically says, any claims that I may have against this company pursuant to final and binding arbitration before a neutral arbitrator. She also says that if I file a lawsuit regarding a claim against the company, and it says, including a claim out of or relating to my application for employment, my employment, or the termination of the employment. The word including is not a matter of limitation, but is one of further explanation as far as specifically indicating what claims are in addition being specified. So it's not a matter of limitation with respect to matters out of the employment, but it is much broader than that. She also indicates if I have any questions about the plan, I will discuss the plan with the human resources department. And it says this agreement and the plan constitute the entire agreement regarding the resolution of all claims between the company and me. She acknowledges at the very first sentence of the employee dispute resolution agreement, I have received and carefully and read carefully the employee dispute resolution plan of Sagittarius. Sagittarius was a company that owned Captain D's and a company, Del Taco. It doesn't say in the plain reading of the agreement, says that she is an employee and specifically says for my initial and or continued employment with Captain D's. When she acknowledges that she has received the plan, it is the plan that Sagittarius has developed for itself as well as Del Taco and Captain D's. Nowhere in the plan does it indicate that she is an employee of Sagittarius. It is simply referring to this plan is the plan by which we'll govern arbitration. The trial court may try to make a distinction between the plan and the agreement, but there is no difference. The plan and the agreement are exactly the same in that it includes all claims against Captain D's. Was the plan attached to the agreement when she signed it? I don't know if it was given to her, but I'm not saying whether it was attached or not. Does the record reflect that she was given a copy of the plan at the time that she signed the agreement? Yes, and as far as there is an affidavit from Captain D's, but if you look at her own affidavit with respect to Willis, it is ambiguous to whether or not she received the plan. And I think the ambiguity in her affidavit goes against whether or not, you know, as far as she received the plan. Because in the agreement, she specifically acknowledges that she received and carefully reviewed the employee dispute resolution plan. You can't agree to something and then dispute it later. I've cited cases within my brief that say, you know, if you... What does she say in the affidavit then? What's the ambiguity? It says, as a condition of my employment, my employer required me to sign a document containing an employee dispute resolution plan. She also says, at the time I was presented the employee dispute resolution plan by my employer, I was not provided an opportunity to consult an attorney regarding the contents of the documents or the legal ramifications. So she never actually says she didn't read it. Right. And so as far as... But she says that, but when she acknowledges and signs the agreement, she says that she has read the agreement. What is also interesting for the record is that Ms. Willis was previously employed by Captain Deese in 2008 and signed a similar agreement that she had received and reviewed the plan. And she knew that there was an arbitration provision. As this court knows, there is federal and state courts, and especially if we look at the Anheuser-Busch case that I've cited, that you construe arbitrations broadly. There's a presumption in favor of arbitration and that the courts will look at two issues. One is whether the parties made an agreement. I think, as I will discuss shortly, there was an agreement that claims signed that had clear and unambiguous terms that she would agree to arbitrate all claims with Captain Deese. Did she have any choice about signing this? No, it was a condition of employment. I mean, she had to sign it if she wanted to work there, right? Absolutely. And it was a take it or leave it? Absolutely. No, you don't dispute that? I don't dispute that. Under Illinois law, that is perfectly acceptable as far as because an employer could define these particular terms of employment. The second gateway issue that the court looks at as far as whether the arbitration agreement applies to a particular controversy, I think in this situation, we look at whether there was, to determine whether there was a contract, there was an offer, acceptance, and consideration. Clearly, there was an offer because in the agreement, it says, in consideration for and as a material condition of my initial and continued employment with Captain Deese. That was the offer, and the offer was, if you want to work, you are going to arbitrate any claims with Captain Deese. It says three times within the various provisions clearly that any claims against Captain Deese are going to be arbitrated in paragraphs B, D, and G. It indicates that all claims are going to be arbitrated. She manifested acceptance in that she said she reviewed and read, she had an opportunity to consult an attorney in the agreement, and that she signed the agreement. With respect to consideration, there are two different things that Illinois courts recognize, and that is, one, as far as initial or continued employment is valid consideration for entering an arbitration agreement. Also, with respect to mutuality of promises, it is clear that Captain Deese agreed, because it made part of the agreement, the plan, that any disputes between the two will be subject to arbitration. It is the only accepted claims are ones that are statutorily accepted, workers' compensation and unemployment, and also equitable claims. But it's not whether Captain Deese can bring equitable claims. It's both parties have the right to not to bring an equitable claim through arbitration. It's not a one-sided agreement, so there's a mutuality of promises with respect to what is going to be arbitrated. Well, Captain Deese did exclude some types of cases, right? Well, there are kinds of things they would bring. Well, in particular, it's the 1, 2, 3, 4, 5th paragraph of the plan says, the plan does not cover claims for equitable relief for claims alleging trade secret violations, trademark infringement, breach of fiduciary duty, and breach of non-competition agreements. Those would all be matters that Captain Deese would be likely to... Well, more likely, as far as more likely than not, those are claims that Captain Deese would bring. There's no question about that. But if there was something within that ambit that plaintiff could bring, they could do that. If there was a certain non-competition or agreement or something that was in dispute and it was... It's kind of hard to imagine under what circumstances she would bring one of those types of cases. But I'm just making the point that it's not a global issue where all cases have to be arbitrated by both sides. As far as it is, and it only applies to equitable, those are claims with respect to legal relief, and they would have to be arbitrated. And that's because, and I think, and from my experience with arbitration agreements, because of the ability to get injunctive relief in an equitable claim because of the harm that could be done in a particular... But all legal claims for these matters would have to be brought through arbitration. The thought was, as far as whether or not it was unconscionable, this is a one-page document, which is the agreement, and the plan is four pages. This is not the situation of a case where it is an arbitration agreement that is buried in a maze of 25 pages. It is clear. It talks about arbitration at least five times on the agreement, and the whole agreement in the plan is about arbitration. So we're not talking about like a telephone contract in the case of the claimant's site where you're talking about 500 different terms. The subject of the agreement and the subject of the plan is clearly about alternative dispute resolution. So it is, and it's not in fine print. She acknowledged receipt of the terms both in the agreement. She acknowledged the terms of the agreement. She acknowledged that she had received and reviewed the plan, not once, but in her prior employment as well. This is, there is no substantive unconscionability. Her remedies are the same in arbitration as they are in a court of law. There is no limitations. There is one case that I cited where the Illinois court, there was a limitation on the amount of recovery of attorney's fees, and the court said, we're still going to find arbitration, but we're going to strike that provision that we believe to be unfair. So the remedies are the same, and it requires both parties to arbitrate. Plaintiff Applee has argued that she's, in her affidavit, she's indicated that I'm going to have to incur fees in prosecuting this case. So this, an arbitration is no different than any litigation with respect to expert fees and deposition fees. Plaintiff bringing the case has to incur those fees. But in the plan, it specifically provides that like in a court of law, all costs and attorney's fees can be obtained as if you were in a court of law. As I indicated in the initial portion of my argument, the, both the agreement and the plan talks about all claims. There's no, it's no limitation with respect to whether they arise out of the employment or not, which the trial court tries to make that distinguished, but it doesn't. And I think there is no disparity between the two because, and I think it's clear that the word including is not a matter of limitation. Even if this court were to say it would apply, it was a matter of limitation, all of the claims brought within the petition, the negligent hiring, retention, supervision, investigation, intentional infliction of emotional distress, the statutory claim under the Illinois Human Rights Act, all relate to her employment. And plaintiff so pleads in her complaint that at all times she was acting, she was an employee and all of the actions which she incurs are at the restaurant. She also pleads that Soborowski and Santiago were employees and acting as employees. So I think the complaint brings it clearly that all of the actions alleged in the complaint arose from her employment. The court, the trial court seemed abhorrent that a matter of sexual harassment and assault could be, as a matter of public policy, could be compelled to arbitration. Clearly, many courts and cases that I've cited, the Franks Nursery case, Estella Saramara, Safran versus Cope Hearts, which was an assault case, the Saramac was the American Express case, and the Medina case, Anheuser-Busch, was a sexual harassment case as well. So, and I truly think that they fall, fall, all claims fall within the arbitration agreement. Thank you. May it please the court, Mr. Rice, my name is Dave Cates, and I'm here on behalf of Elisha Willis, the appellee in this case. I'm here before you, your honors, today to explain to you why the circuit court was correct in denying arbitration in this case. And I'm also here to explain to you why, even if the circuit court erred in making its decision, this dispute is still not arbitrable. And that's for several reasons, including that the employee dispute resolution agreement, which you've heard about, and the employee dispute resolution plan are separate documents. If they are, as counsel for the appellant states, then the dispute falls outside the scope of the arbitration agreement because they're incompatible. Also, if the arbitration clause is valid, Captain Deese has waived his right to arbitrate by breaching the dispute resolution plan. Additionally, the arbitration should be rescinded due to lack of consideration or mistake. And finally, that the arbitration clause is unconscionable. In support thereof, I'd like to give the court a few of the facts that were kind of glossed over as we started the argument initially. Ms. Willis, my client, was employed by Captain Deese on February 10th, 2011. Captain Deese is a corporate store in Belleville, Illinois, the location of Carlyle Avenue. Beginning in March of 2011, a co-employee named James Soboroski began making unwanted sexual advances at her that enhanced themselves, or he enhanced the conduct to a groping Ms. Willis. Obviously, this was done without her consent. Ms. Willis complained to her general manager, Derek Santiago. She called the corporate hotline to make a complaint about Mr. Soboroski. And, in fact, the only thing that was done was Mr. Soboroski was made her supervisor. So the harasser now has the authority to set her schedule. On about June 24th, 2011, some four months after the harassment started, Soboroski put Ms. Willis into a situation where she was to clean the women's restroom. She went in there to do so. Mr. Soboroski came in the restroom behind her, attempted to pull her pants down, and basically attempted to rape her. Those allegations are contained within the complaint. Ms. Willis resigned her employment and has been seeking treatment. And as counsel stated, we filed a lawsuit on her behalf after receiving a right to sue from the Illinois Department of Human Rights. And the matter was filed in St. Clair County Circuit Court. And the motion to compel was denied on April 30th of this year, which brings us to this court. I don't have much to add to counsel's statements regarding the standards, except, as this court's well aware, the arbitration is a two-pronged inquiry. Number one, is there a valid agreement to arbitrate? Number two, does the dispute fall within the scope of the arbitration agreement? It's black-letter law that parties cannot be required to arbitrate disputes which are outside the scope for which they did not agree to arbitrate. Even if the court finds that the dispute, the arbitration agreement is valid, and the dispute would normally fall within the scope of the arbitration agreement, state law contract defenses apply, such as fraud, unconscionability, duress, which could invalidate the arbitration agreement. Turning to the court's resolution of this issue, there are two documents that form the basis for the appellant's claims that this dispute is subject to arbitration. And you've heard them, and they're titled the Employee Dispute Resolution Agreement and the Employee Dispute Resolution Plan. There are some material differences between these two documents, despite appellant's claim that they're the same. In the Employee Dispute Resolution Agreement, it references a company called Sagittarius Restaurants LLC, and then it says Captain D's LLC is the company. If you look at the Employee Dispute Resolution Plan, however, it defines company as Sagittarius Restaurants LLC, and it's in city areas. And this was not addressed in the appellant's argument, but it's relevant to the consideration of this matter. Sagittarius Restaurants LLC was the, it's a California company, it's now known as Del Taco Holdings, Inc., but they were a corporation that owned Captain D's prior to 2010. In 2010, they sold Captain D's to a company called Sun Capital Partners. So at the time Ms. Willis began employment in February of 2011, Captain D's was owned by Sun Capital Partners, not Sagittarius Restaurants LLC. And the ambiguity is created that the, apparently Captain D's LLC didn't change their contracts or their documents to reflect that sale. But what the circuit court of St. Clair County is looking at is an additional ambiguity that exists between these plans, and that is the paragraphs that reference what disputes are subject to arbitration. So the court was not looking at the issue of whether there's a valid agreement. The court was looking at whether the agreement is subject to arbitration because it falls within the scope of the arbitration probation. And the Employee Dispute Resolution Agreement contains a very narrow scope of claims that arise out of, relate to the application for employment, the employment or termination thereof. Admittedly, the Employee Dispute Resolution plan is much broader. It contains a arbitration provision that applies to any and all claims that arise from those scenarios, or additional language that makes the plan applicable, even if it doesn't relate to employment. So, ostensibly, if Ms. Willis is in Alaska on vacation driving a car and gets hit by Captain D's delivery truck, that's arbitrable under this agreement. Well, from Captain D's standpoint, do you think they contemplated that this type of claim would be within the scope of the arbitration agreement? I do, and I think that's the case because of what happened to them in the Mississippi Supreme Court. That's exactly what I was going to point out. I mean, they had prior claims of this type, so certainly it would have been their intention to cover that. Certainly, and their intention to cover it was based on Ms. Smith v. Captain D's LLC in the Mississippi Supreme Court. And the Mississippi Supreme Court, I think that's important because that's what the circuit court was looking at. And the Mississippi Supreme Court case was interpreting the provision as it was contained in the Employee Dispute Resolution agreement. And obviously, the Employee Dispute Resolution plan came after that in an attempt to circumvent that decision. And in fact, it did if you look at the district court of Mississippi's opinion of Page v. Captain D's, where they interpreted the new clause and said, yes, this covers it. The difference between those cases and this one is that the Employee Dispute Resolution agreement that Ms. Willis signed contains the old language that the Mississippi Supreme Court found was too narrow to encompass all of these claims. The plains contains the broader language, but there's an ambiguity between how you merge those two documents. And so what the circuit court was looking at was the general bedrock principles of contract law, that ambiguities in contracts are construed against the drafter. And there's been – I don't think there's any doubt in front of this court that Ms. Willis did not sit down and write these contracts. These were written by Captain D's LLC. So to the extent there is an ambiguity, those would be resolved against Captain D's, and that's what the circuit court did. In this case, and found that the dispute was not arbitrable because the claims fell outside the scope, in accordance with the Mississippi Supreme Court's holding, which interpreted the exact same clause and under the exact same circumstances and claims that are present here. But following up on that, even if this court were to find that the broader language would somehow be applicable, the dispute would still not be subject to arbitration. And that is because of something that the appellants are trying to target to this court, which is that we're going to bootstrap Sagittarius LLC's plan as our own. And the argument that they're making is that, yes, the employee dispute resolution plan doesn't say – it doesn't refer to Captain D's in their current form, it only refers to Sagittarius Restaurant's LLC as the company. But the plaintiff signed the agreement that referred to that plan, so therefore we're going to use that plan as ours. We're going to use some other company's plan to handle our disputes. Well, the problem with that arises when you look at the employee dispute resolution plan and the definitions that are contained in it. So at the very first paragraph of the employee dispute resolution plan, it defines company not as the agreement does but as Sagittarius Restaurant's LLC and its subsidiaries. There's no dispute that in March or February of 2011, Captain D's LLC was not a subsidiary of Sagittarius Restaurant's LLC. So it does not fall within the definition of company under the plan. If you then look at what the plan applies to, the plan in the third paragraph, first sentence, it says this plan applies to any and all legal claims, demands, or controversies between the company, as defined in the plan, and its employees, which Ms. Willis is not. So this employee dispute resolution plan, by its terms, limits itself to claims between Sagittarius Restaurant's LLC and its subsidiaries and the employees of Sagittarius Restaurant's LLC and its subsidiaries. So Captain D's can't do what it wants to do, bootstrap this contract as part of its own, because if it does, then our claims are expressly outside the plan because Ms. Willis is not an employee of the company as defined in this document. So if this applied, which Captain D says it does, then it cannot apply to Ms. Willis because she's not an employee of the company as defined in this plan. So her claims are definitely not within the employee dispute resolution plan, as Captain D says is applicable. Counselor, to refresh my memory, on the motion to compel arbitration, was there evidence presented, the facts that you just recited, you say they're not in dispute, and how are they a part of the record, I guess is my question. As to Sun Capital Partners owning them? Yes. I believe that Sun Capital Partners, I believe it's referenced in our complaint, and it's something that was the subject of argument before the circuit court and it should be in the record that the sale occurred. There was a dispute. We did have some fun in the circuit court level about figuring out how many different entities were between Sun Capital Partners LLC and Captain D's LLC, because I think there was about a dozen. But the court resolved it by talking to counsel and holding a hearing up and related to the fact that which entity owned it, but there was no dispute that it wasn't Sagittarius Restaurants LLC that they had sold in 2010. Additionally, Your Honors, even if the court were to find those two arguments don't apply, Ms. Willis would argue that the arbitration clauses does not apply because Captain D's has breached the agreement already. And to get to this point, the court would have to find that the employee dispute resolution plan, as improperly defined, somehow does apply to Ms. Willis, which we argue does not. But assuming arguendo does, the employee dispute resolution plan, at the bottom of the first page, says that there are steps that you have to follow to resolve a dispute or dispute a claim. And one of those is that you have internal discussions. I think this court's well aware of the law, and we cited it in our brief, but the Illinois Supreme Court has held that under general contract principles, a breach of a contract provisioned by one party is grounds for releasing another party from their obligations. And additionally, the courts have held that substantial non-performance of a contract warrants rescission, where non-performance of an element is such a nature and importance that the contract would not have been made without it. And that applies to this portion because it's undisputed before this court that Ms. Willis did what she was supposed to do. She contacted her supervisor, she called the company hotline, and they did nothing. So the issue becomes, what was Captain D supposed to do under their plan? And we would argue that step one, internal discussions, a discussion implies there's two parties to it. That she's going to make her complaint and that she's going to get some satisfaction or some kind of response out of reporting it. And as noted, the only response she got was that Captain Deese took the harasser and made him responsible for her schedule. So we would argue to the court that Captain Deese has breached its duty under the plan to engage the plan. And by so doing, Ms. Willis should be relieved of her obligations under the contract, under Illinois contract principles, that a breaching party should not be able to enforce a contract against a non-breaching party. And I think it goes without saying that from our point of view, the non-performance of engaging in the dispute resolution plan is of such a nature that Ms. Willis, if she could be said to have made this contract, would have agreed to it without Captain Deese agreeing to do something. I find it hard to believe that anyone would sign up for a dispute resolution plan, where one side of the dispute doesn't have to do anything in response to a claim that's made or a dispute that arises. So we would argue that both of those apply. Additionally, we would argue, and we have argued before the court, that the consideration for making this agreement, alleged arbitration agreement, is lacking. And counsel for Captain Deese has argued to this court that the consideration is for employment and as a condition of employment. And I think that that's belied by the language that's contained in the employee dispute resolution agreement that was not read to you, and that's subparagraph F, which states that in the second sentence, if the company offers me employment, then I become employed by the company. So what that's saying, a plain reading of that statement, is that this is being signed in consideration for considering her application for employment. It's not being signed as a condition of employment because it says right there that if I become employed. So she's signing this before she's employed. She's signing this before she's been offered a position. She's signing this by its plain terms for an offer to consider her application for employment. And that's important because the Supreme Court has stated, and I think we cited this case in our brief, Dwyer v. Graham, 99 Illinois 2nd, 205, where the court stated, one of the commonest kind promises too indefinite for legal enforcement is where the promisor retains an unlimited right to decide later the nature or extent of his performance. This unlimited choice destroys the promise and makes it illusory. So numerous courts outside of Illinois have held that the mere act of saying that we will consider your employment is insufficient consideration for a contract. Illinois has not directly addressed that point yet on a reported decision that we could find. But I believe the only Supreme Court's holding in Dwyer is pretty clear that considering someone's employment is an illusory promise versus offering someone employment in exchange for signing the agreement. Additionally, as argued in our brief, Your Honor, the arbitration agreement should be rescinded due to the mistake of Ms. Willis. One of the issues that the court raised, I believe Justice Stewart raised, was the issue of the affidavit and what Ms. Willis did not say. And in paragraph seven, she clearly states, she clearly affirms that it was not disputed at the trial court level. I was only provided the signature pages of the employee dispute resolution plan and was not provided the full text of the document for review prior to execution of the saying. So it's clear that she did not have a meaningful opportunity to review this document. It was part of a raft of papers that were put before her when she sat down to sign forms to apply for employment at the knees. And additionally, supporting the idea of the mistake is the fact that the employee dispute resolution plan and the employee dispute resolution agreement are not reconciled. They talk about different companies. They define the scope of the arbitration differently. And this is, again, it's not Ms. Willis' fault. And it can't be said that she's unsophisticated to the extent that she should understand these because the circuit court found the same ambiguity that we're arguing today. So it's clear that Ms. Willis is well within the realm of possibility to argue that she did not understand what she was signing. And she did not understand that Captain D's LLC is not a subsidiary of Sagittarius or that Sagittarius is some wholly different company and she's bound by some wholly different company's dispute resolution plan. So we would argue that mistake would also support decision of this agreement. Finally, we would, again, argue that the agreement is unconscionable. And without going into the long history of unconscionability cases in Illinois, I think the court's familiar with Razor and Kinkel, and those are the two cases that would be most applicable to this case. Illinois law does not require both procedural and substantive unconscionability. The Razor court held it could be one or the other. But in this case, we believe there's both. Procedural would apply where there's a disparate bargaining power or where the party cannot be said to have understand the agreement they're signing. And obviously, we have disparate bargaining power here. This is a corporation. She needs work. And she had no ability to negotiate or change this agreement in any way. We can also clearly say that, as we've argued, Ms. Willis is justified in claiming that she didn't understand this agreement as the circuit court had the same difficulties trying to reconcile these two agreements that Ms. Willis did. Substantive unconscionability refers to the terms and fairness of the obligations. And as the resolution plan states, and, again, as the court has previously discussed, Captain Deese reserves claims, allegedly, that it can file lawsuits over and prevents the employees from doing so. An additional factor is, in addition to the costs and disparate obligations that the parties engage in, is that Captain Deese, if you look at the plan, if it applies, reserves the right to modify or change it at any time. The employee doesn't have that right. So Captain Deese could ostensibly change this plan at any time and make the alterations different, make the conditions required to litigate or pursue a claim different than what Ms. Willis could do. And, Your Honor, I see my time is up. Thank you. Thank you, sir. You're welcome. Thank you, Your Honor. Yes, as you pointed out, Judge, as far as there are two documents, as far as there is the agreement and there is the plan. The agreement, which plaintiffs signed, incorporates the plan. This court, as far as the appellate courts in Illinois, have clearly recognized in the Orkin and in the American Express case and in the Pizza Hut, Chapman v. Pizza Hut case, that you can adopt the plan. If you look at the agreement, it clearly indicates that plaintiff is an employee and it's for her initial and continued employment with Captain Deese. It is incorporating a plan as far as on how these disputes are going to be resolved. If you look at the Orkin American Express and in the Chapman case, in the Chapman case, they adopted the AAA rules of arbitration. You can simply say these are the rules that are going to apply. Nowhere does it indicate, either in the plan or the agreement, that she is an employee of Sagittarius, and that is just a total misconstruing of the agreement. It is very clear from the very first paragraph of the agreement that it is for her employment with Captain Deese. Yes, it's termed an agreement, but it wasn't signed by anyone on behalf of Captain Deese. Right. And as a matter of fact, there's not even a signature line for the employer. That is correct. So we just take it, since they presented it to her, that they are agreeing to it. Yes, and if we look at Medina, that's the same situation. They were presented with an agreement. As far as with the Anheuser-Busch case, you're presented an agreement, and by plaintiff going ahead and performance with saying, by her performance and continuing to employ, that is acceptance of an agreement. There are several cases that I've cited that have indicated that a signature on behalf of the employer is not required, Medina, the Illinois Supreme Court being the first. It would be easier to determine who the employer is who is entering into this agreement. I mean, there's a dispute about whether it's Sagittarius or who it is, if there was a name or a signature line or something like that. Well, as far as, it's not even a dispute as far as who her employer is. She specifically states that her employer is Captain Deese, LLC, in the complaint. And she specifically states in her affidavit that she is the employee by Captain Deese, LLC. Counsel, let me ask. I'm sorry. No, no. Are you? Yeah, that's fine. On the breach argument in the recital, it's undisputed that she made the call in, and the action was taken of this harasser being made her supervisor. Do you agree those facts are undisputed? No, as far as what she says, there is a negligent investigation and said there was insufficient investigation when they did what was insufficient. No, I don't agree that there is a breach. But any breach I think is clear would have to be interpreted by the arbitrator. Once there is an agreement and it falls within their, I think, and I cite particular cases that would have to be determined by the arbitrator. The Smith argument is absolutely incorrect. Because in Smith, it is not the same agreement that plaintiffs signed. It says in Smith, arising out of or relating to my application for employment or cessation of employment, it's much more limiting than the agreement she signed or the agreement that was in Page. This Court, as well as the Illinois Supreme Court and other district courts, have said consideration of employment is sufficient consideration with respect to the mutual promises. With respect, this cannot be construed as an application for employment. But even in applications for employment, this Court in Chapman, in Schiller, have indicated that arbitration provisions are sufficient. With respect to the modification, the modification, if you look at the plan with respect to an amendment, it doesn't apply to any existing claims. This Court specifically reads the paragraph. Any modification or termination of the plan does not apply to any claim that is in the statute. Thank you very much, Your Honor. The Court will come now to the due course.